IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| HEATHER DIEZ<br>6661 Bartrams Forest Lane<br>Haymarket, Virginia 20169<br><br>      Plaintiff,<br><br>      v.<br><br>PRINCE WILLIAM COUNTY<br>SCHOOL BOARD<br>14715 Bristow Road,<br>Manassas, VA 20112<br><br>      Defendant. | Civil Action No. _____ |

## COMPLAINT

COMES NOW THE PLAINTIFF, HEATHER DIEZ, by counsel, and moves this Court for entry of judgment in her favor, and against Defendant PRINCE WILLIAM COUNTY SCHOOL BOARD, and in support of such motion alleges and avers as follows:

### NATURE OF ACTION

1. This is a civil action alleging discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended and the Equal Pay Act, 29 U.S.C. § 206(d).

### PARTIES

2. Plaintiff Heather Diez ("Ms. Diez") is a resident and citizen of Prince William County in the Commonwealth of Virginia. At all times relevant hereto, Ms. Diez was employed by Prince William County School Board in Prince William County in the Eastern District of Virginia.

3. Defendant Prince William County School Board ("Board") directs and oversaw Prince William County Schools ("PWCS"), pursuant to Art. VIII, §7 of the Virginia Constitution. The Board has overall responsibility for hiring, training, and supervising its faculty and staff, including the individual defendants. The Board and PWCS are located in the Eastern District of Virginia.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over the Title VII claims under 42 U.S.C. § 2000e-5(f)(3).

5. The Title VII violations all occurred in Prince William County in the Eastern District of Virginia.

6. Prince William County School Board is present in and regularly conducts affairs and business activities in this judicial district. Prince William County School Board is subject to personal jurisdiction in this Court pursuant to Va. Code § 8.01-328.1 (A)(1), (2), (3), and/or (4).

7. Ms. Diez and the Board are residents of the Eastern District of Virginia.

8. The causes of action alleged in this action arose in the Eastern District of Virginia.

9. The unlawful employment practices committed by Defendant occurred in this judicial district, and employment records relevant to such practices are maintained and administered in this judicial district.

10. Venue over the Title VII claims is proper in this Court under 42 U.S.C. § 2000e-5(f)(3).

## PROCEDURAL STATUS

11. Ms. Diez timely filed a Charge with the Prince William County Human Rights Commission and United States Equal Employment Opportunity Commission ("EEOC") on September 11, 2024.

12. On May 7, 2025, the Prince William County Human Rights Commission issued a determination finding reasonable cause to believe discrimination and retaliation occurred. On July 10, 2025, the U.S. Department of Justice, Civil Rights Division, informed Ms. Diez that she was receiving a Notice of Right to Sue based on her Charge to the EEOC.

13. This action is timely filed.

## BACKGROUND

14. Ms. Diez is female.

15. Ms. Diez began working for PWCS on or around August 15, 2023, as the Director of the Facilities Department.

16. Ms. Diez's supervisor was Vernon Bock ("Mr. Bock"), the Chief Operating Officer.

17. Ms. Diez was treated differently than male employees with regards to salary, telework, and discipline, based on her gender (female).

18. Ms. Diez's similarly situated male coworkers were paid significantly more than she was (including in total compensation components such as take-home vehicle privileges) (Ron Crowe and William Wohead).

19. Mr. Bock informed Ms. Diez that Mr. Crowe (Director of Risk Management and Security Services) was paid more than she was paid. Mr. Crowe's total responsibilities were materially smaller (he managed a substantially smaller staff and budget compared to Ms. Diez.

20.　　Mr. Wohead was offered the position of Facilities Director at PWCS for a salary of approximately $220,000 before Ms. Diez was hired. Ms. Diez has more experience and qualifications, and had been advised by Mr. Bock that she should make at least that amount. However, PWCS offered Ms. Diez only $201,000. When Ms. Diez requested a higher salary, PWCS settled at a salary of $206,000 for her. Mr. Bock told Ms. Diez that he was surprised by that and that her salary should have been the same as Mr. Wohead.

21.　　After PWCS terminated Ms. Diez, PWCS offered the Facilities Director position to Justin Moss – who, upon information and belief, had less experience than Ms. Diez – and, upon information and belief, compensated him at or above Ms. Diez's salary.

22.　　Two other male directors at PWCS have take-home vehicles funded by Prince William County, both out of the county (one to Baltimore, Maryland and one to Goldvein, Virginia), which the County Superintendent is not supposed to allow. This vehicle compensation is in addition to their base compensation. Both of these male employees, Robin Marshall and William Miller ("Mr. Miller"), are less experienced than Ms. Diez.

23.　　Mr. Miller is a friend of Mr. Bock, and Mr. Bock also promoted him without competition.

24.　　Per the Superintendent, HR, and county policies, Directors are not allowed to telework. Yet both Mr. Bock and Shakeel Yusuf (CFO) allowed male Directors to telework, despite being told directly that it was not permitted.

25.　　In contrast to how these male employees were treated, when Ms. Diez asked to telework a handful of days in the year, she had to still report to work for half the day and was told "not to make a habit of it."

26. In fact, multiple similarly situated male coworkers were allowed to telework for significantly more work hours than Ms. Diez was allowed to telework. For example:

- Robin Marshall: Mr. Bock allowed him to telework and advised him to "keep it on the down low from 'The Boss'"
- William Miller: Mr. Bock allowed him unlimited telework, until it became an open staff complaint
- Matthew Cartlidge: Mr. Bock told Ms. Diez to allow full-time remote work for him and to be sure that HR did not know (as HR had previously complained about this) about it and to "be careful," but said that they would lose Mr. Cartlidge if he could not telework all the time. Mr. Bock said that he would "work on The Boss" to get her to agree to make Mr. Cartlidge either an Assistant Director or Director who was allowed to telework all the time.
- Mr. Bock: Mr. Bock also teleworked himself.
- Mr. Bock told Ms. Diez that he had been part of a deal that allowed his longtime personal friend, the Assistant Director of DIIT, to get full-time telework.

27. Ms. Diez complained to Mr. Bock that these telework practices were unfair, as these men were boasting about how great their life was teleworking and being with their dogs and families. Ms. Diez expressed that she was also interested in this, but was not allowed to break the "rule," which was not applied equitably.

28. Ms. Diez was often unable to take sick or vacation time without being called, texted, and emailed by Mr. Bock, Mr. Miller, and Jennifer Rydholm (another friend of Mr. Bock). Yet, her time responding was not allowed to count as telework.

29. In contrast, male employees were not to be disturbed when they were off work, or even when at dinner.

30. Ms. Diez voiced concerns to Mr. Bock multiple times about this disparity and the lack of concern for Ms. Diez's time or well-being, in contrast to how male employees were treated.

31. Ms. Diez complained about the discrimination based on her gender. She complained in writing and verbally to Mr. Bock, Matt Wygal (HR), Jennifer Rydholm (HR), Michelle Salzano (HR), Elizabeth Blancke (HR), the Office of the Ombudsman, Security (Ron Crowe and staff), William Miller, and Connie Balkcom (HR). Ms. Diez complained about the disparities in treatment and pay based on gender, the "boys' club" and "good old boys" environment, physical and verbal harassment, and intimidation.

32. In response to Ms. Diez's complaints, Ms. Diez's employment with PWCS was terminated on or about August 29, 2024. Her termination was in retaliation for her complaints about discrimination.

33. Ms. Diez was terminated from PWCS based on alleged violations of PWCS's Professional Conduct, Drug and Alcohol policy and its Responsibilities and Duties of Employees policy. This was all pretext.

34. Male coworkers who performed similar actions were not disciplined or terminated.

35. Rodney Clayborn ("Mr. Clayborn"), Supervisor, chews tobacco at his desk in the PWCS building. Ms. Diez reported this to Mr. Bock multiple times, but he chastised her for bringing it up and did not allow her to handle it. Ms. Diez also reported it to HR and Security, along with her Assistant Director (Mr. Clayborn's supervisor), while HR was investigating Mr.

Clayborn for wrongdoing. Mr. Bock stopped and reversed HR's investigation into Mr. Clayborn. Several men on Mr. Clayborn's staff also chew tobacco in the building and on school properties, in violations of PWCS's policy.

36. Mr. Clayborn, David Beavers, and Mr. Bock all brought alcohol onto school properties. Mr. Bock accepted gifts of alcohol from both Ms. Diez and from a male colleague, Julius Williams ("Mr. Williams"). Not only did Mr. Bock not indicate that this was a problem, but he did not even mention any policy about it. Mr. Bock sent staff pictures of alcohol and an "El Jefe" drinking glass, stating that he loved it. Mr. Bock and Mr. Williams also spoke of the expensive bottle of alcohol Mr. Bock had accepted from Mr. Williams, again with no punishment.

37. In June 2024, Ms. Diez informed Mr. Bock in advance of her planned gift of beer to a retiring employee (and the employee took the gift of alcohol directly to his car in a closed container). Mr. Bock did not indicate that this was any issue.

38. HR and Division Counsel were also aware of employees giving gifts of alcohol, and accepted and appreciated them, and did not consider them or report them as any type of wrongdoing.

39. In contrast, around 5-6 weeks after Ms. Diez gave the gift to the retiree, and without any notice to her, Mr. Bock and HR directed his male staff to bring Ms. Diez in for questioning about the "beer gift to the retiree." PWCS interviewed Ms. Diez for a few minutes about the alcohol gift, and Mr. Bock later used this in a verbal attack against Ms. Diez, and her subsequent termination.

40. This was in marked contrast to how male employees were treated, and how Ms. Diez had been treated prior to making her complaints of discrimination.

41. On May 7, 2025, the Prince William Human Rights Commission recommended a "Probable Cause" finding as to Ms. Diez's complaints against PWCS of disparate treatment concerning remote work, discipline, and retaliation.

42. Ms. Diez was discriminated against and retaliated against because of her gender, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

## COUNT ONE
## DISCRIMINATION IN VIOLATION OF TITLE VII
### (against Defendant Prince William County School Board)

43. The foregoing allegations are incorporated as if realleged herein.

44. Defendant discriminated against Ms. Diez, and treated Ms. Diez in a disparate manner, because of her sex (female), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

45. As described above, Defendant treated Ms. Diez differently and worse than male employees.

46. Employees who were not female were not treated this way.

47. Ms. Diez was treated differently, based on her gender.

48. Ms. Diez was discriminated against in terms of her employment because of her gender.

49. Defendant's discriminatory treatment of Ms. Diez was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

50. In discriminating against Ms. Diez in violation of the law, Defendant evidenced malice, spite, and ill will; its actions were willful and wanton; and it evinced a conscious disregard for the rights of Ms. Diez.

51. Defendant engaged in these practices with malice and with reckless indifference to the federally protected rights of Ms. Diez, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

52. As a direct and proximate result of Defendant's actions, Ms. Diez has suffered and continues to suffer injury, including loss of income, loss of employee benefits, lost career and business opportunities, embarrassment, humiliation, emotional distress, inconvenience, time, frustration, and other pecuniary damages.

53. Plaintiff seeks all relief available under Title VII against a public employer, including back pay, front pay, reinstatement or instatement, compensatory damages where permitted, injunctive and equitable relief, and attorneys' fees and costs.

54. Due to the conscious disregard for Ms. Diez's federally protected rights, and the severity of Defendant's conduct, Ms. Diez is also entitled to punitive damages.

## COUNT TWO
## RETALIATION IN VIOLATION OF TITLE VII
### (against Defendant Prince William County School Board)

55. The foregoing allegations are incorporated as if realleged herein.

56. As described above, Defendant retaliated against Ms. Diez in response to her complaints of discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

57. This retaliation included terminating Ms. Diez's employment in response to her complaints of discrimination.

58. Defendant's discriminatory treatment of Ms. Diez was in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

59. In retaliating against Ms. Diez in violation of the law, Defendant evidenced malice, spite, and ill will; its actions were willful and wanton; and it evinced a conscious disregard for the rights of Ms. Diez.

60. Defendant engaged in these practices with malice and with reckless indifference to the federally protected rights of Ms. Diez, within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

61. As a direct and proximate result of Defendant's actions, Ms. Diez has suffered and continues to suffer injury, including loss of income, loss of employee benefits, lost career and business opportunities, embarrassment, humiliation, emotional distress, inconvenience, time, frustration, and other pecuniary damages.

62. Plaintiff seeks all relief available under Title VII against a public employer for retaliation, including back pay, front pay, reinstatement or instatement, compensatory damages where permitted, injunctive and equitable relief, and attorneys' fees and costs.

63. Due to the conscious disregard for Ms. Diez's federally protected rights, and the severity of Defendant's conduct, Ms. Diez is also entitled to punitive damages.

## COUNT THREE – VIOLATION OF THE FEDERAL EQUAL PAY ACT
**(against Defendant Prince William County School Board)**

64. The foregoing allegations are incorporated as if realleged herein.

65. The Prince William County School Board paid Ms. Diez less compensation than her male counterparts. Ms. Diez held the same level of authority and performed equal work under similar working conditions—the performance of which required substantially equal skill, effort, and responsibility—as her male counterparts (including but not limited to Messrs. Wohead, Crowe, Marshall, Miller, and, upon information and belief, Justin Moss), while being

paid significantly (approximately $10,000–$20,000 in base pay) less and/or receiving inferior total compensation (including loss of take-home vehicle privileges provided to male comparators).

66. The lower compensation paid to Ms. Diez was on account of her gender (female), and not due to a seniority system, a merit system, a system which measured earnings by quantity or quality of production, or a differential based on any factor other than gender.

67. Defendant's failure to provide Ms. Diez with equal pay was willful and in disregard of her federally protected rights, and persisted throughout her tenure with PWCS.

68. Ms. Diez complained about her unequal pay to her male counterparts.

69. As a direct and proximate result of the unequal pay, and Defendant's specific illegal acts, Ms. Diez has suffered and will suffer in the future damages, including loss of income, litigation expenses including attorneys' fees, and other past pecuniary losses.

70. Plaintiff seeks all relief available under the Equal Pay Act against a public employer, including back pay, liquidated damages, injunctive and equitable relief.

71. Because Defendant's conduct was willful, Ms. Diez is entitled to the full amount of damages recoverable under the Equal Pay Act, 29 U.S.C. § 206, *et seq*., including, but not limited to compensatory damages, liquidated damages in an amount equal to the compensatory damages and attorney fees and costs as described in 29 U.S.C. § 216(b).

### COUNT FOUR – RETALIATION IN VIOLATION OF THE FEDERAL EQUAL PAY ACT
**(against Defendant Prince William County School Board)**

72. The foregoing allegations are incorporated as if realleged herein.

73. Ms. Diez placed Defendant on specific notice that she was being unfairly treated compared to her male counterparts by being paid less than her male counterparts.

74. Defendant refused to grant Ms. Diez a compensation increase equal to her male counterparts.

75. Defendant discriminated and retaliated against Ms. Diez for engaging in protected activity and requesting equal pay to her male counterparts by terminating Ms. Diez.

76. This retaliation is in violation of the Equal Pay Act, 29 U.S.C. § 206, *et seq.*

77. Defendant engaged in the conduct as set forth above and throughout this Complaint, in furtherance of discrimination of Ms. Diez on the basis of her gender, and in retaliation because Ms. Diez engaged in protected activity, that is, requesting equal pay to her male counterparts that held the same level of authority and performed equal work under similar working conditions.

78. Defendant's actions had the effect and/or consequence of violating the provisions of the Equal Pay Act, 29 U.S.C. § 206, *et seq*.

79. Defendant's discriminatory and retaliatory actions were intentional, were actuated by malice, spite, and ill-will; were willful and wanton; and evinced a conscious and reckless disregard for Ms. Diez's rights, including her federally protected rights.

80. As a direct and proximate result of the unequal pay, and Defendant's specific illegal acts, Ms. Diez has suffered and will suffer in the future damages, including loss of income, litigation expenses including attorneys' fees, and other past pecuniary losses.

81. As a direct and proximate result of Defendant's retaliation, Ms. Diez has suffered and continues to suffer emotional distress, physical injury, and other non-pecuniary losses.

82. Plaintiff seeks all relief available under the Equal Pay Act against a public employer, including back pay, liquidated damages, injunctive and equitable relief.

83.　　Because Defendant's conduct was willful and a conscious disregard for Ms. Diez's federally protected rights, Ms. Diez is entitled to the full amount of damages, including, but not limited to compensatory damages, as well as punitive damages, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HEATHER DIEZ requests that this Court enter judgment in her favor and against Defendant PRINCE WILLIAM COUNTY SCHOOL BOARD, on the above Counts as follows:

a) Award judgment in Ms. Diez's favor and against the Defendant in an amount to be determined at trial plus all pre- and post-judgment interest and consequential damages allowed by law; and in addition

b) Award Ms. Diez attorneys' fees and costs, as permitted by law; and in addition

c) Award Ms. Diez all allowable costs and expenses she incurred in connection with this litigation, including the costs of experts; and in addition

d) Award Ms. Diez such other and further relief as may be appropriate in this case.

## JURY DEMAND

**PLAINTIFF HEATHER DIEZ DEMANDS A TRIAL BY JURY ON THE COUNTS ABOVE.**

August 14, 2025                                    Respectfully submitted,

*[signature]*

Adam S. Nadelhaft, VSB 91717
Connor K. Yi, VSB 100034
CHARLSON BREDEHOFT
COHEN BROWN & NADELHAFT, P.C.
11260 Roger Bacon Drive, Suite 201
Reston, Virginia 20190
(703) 318-6800 Telephone
(703) 318-6808 Facsimile
anadelhaft@cbcblaw.com
cyi@cbcblaw.com
*Counsel for Plaintiff, Heather Diez*